IN THE UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

HERITAGE PROPERTY &
CASUALTY INSURANCE
COMPANY

      CASE NO.

  Petitioner,

vs.

ISAAC WELCH, KATHREE
WELCH, and ALISHA LIRANI,
INDIVIDUALLY, AS
NATURAL PARENT,
GUARDIAN AND NEXT
BEST FRIEND OF ALINA
MERCHANT, A
MINOR,

  Respondents.
_____/

## VERIFIED PETITION FOR DECLARATORY JUDGMENT

COMES NOW, Petitioner, Heritage Property & Casualty Insurance Company ("Heritage") and files its Petition for Declaratory Judgment. Heritage asks this Court to exercise its authority pursuant to 28 U.S.C. § 2201 and declare the rights and legal relations of the parties herein. In support thereof, Heritage shows the Court as follows:

## I. PARTIES

1. Heritage is a foreign corporation formed under the laws of the State of Florida with its Principal Address located at 1401 N Westshore Blvd., Tampa, Florida 33607.

2. Respondent Isaac Welch ("Welch") is a resident and citizen of the State of Georgia. Isaac Welch may be served by delivering a copy of the Summons and Petition to him at 190 Honey Lane, Fayetteville, GA 30214.

3. Respondent Kathree Welch is a resident and citizen of the State of Georgia. Kathree Welch may be served by delivering a copy of the Summons and Petition to her at 190 Honey Lane, Fayetteville, GA 30214.

4. Respondent Alishah Lirani ("Lirani") as Natural Parent and Next Friend of Alina Lirani, ("A.L."), a minor, against whom no claims are made in this action but is a necessary party under Fed. R. Civ. P. 19, is a resident of Georgia. Lirani may be served by delivering a copy of the Summons and Petition her at 160 Honey Lane, Fayetteville, GA 30214.

## II. JURISDICTION

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 2201 as there exists a justiciable issue as to Heritage's legal obligations.

6. Heritage is in a position of insecurity and uncertainty, and it contends that Respondent Welch is not afforded coverage under Heritage Policy No.

GAH0023438 with effective dates of July 27, 2022 to July 27, 2023 (" Policy") for a certain March 31, 2023 dog bite incident resulting in injury to minor child A.L. (hereinafter "Incident"). A certified copy of the Policy is attached hereto as Exhibit "A".

7. Complete diversity pursuant to 28 U.S.C. §1332(a) is satisfied as there exists complete diversity between the Parties. Heritage is incorporated in the State of Florida, with its principal place of business at 1401 N. Westshore Blvd., Tampa, FL 33607. Heritage is authorized to do business in Georgia. Respondents are residents of other states, namely Georgia, and complete diversity exists.

8. The Amount in Controversy requirement of 28 U.S.C. §1332 is satisfied because the amount in controversy is greater than $75,000.00. Lirani seeks to hold Heritage liable for an $11,000,000.00 judgment entered against Welch with respect to the styled, *Alishah Lirani as Parent and Next Friend of Minor Alina Lirani v. Isaac Welch*, filed in the State Court of Fayette County, Georgia, Civil Action File No. 2023SV-0757, related to the Incident. See Judgment, attached hereto as Exhibit "B".

9. Heritage may seek declaratory relief under *First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 F. App'x. 861, 864–65 (11th Cir. 2016).

## III.  VENUE

10. Venue is proper in this Court because all Respondents reside within counties making up the Newnan Division of the United States District Court for the Northern District of Georgia.

## IV.  LAW

11. Georgia law applies to this diversity jurisdiction action under *Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments*, 861 F. App'x 270 (11th Cir. 2021). According to the Georgia Supreme Court, Georgia applies *lex loci contractus*, which, only permits Georgia to "consider a foreign state's law" when that case involves a foreign state's statutes or judicial decisions on those statutes. *Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 797 S.E.2d 828, 833–34 (2017). Because Georgia law is favored over any foreign state's common law, Georgia law will apply to this action.

## V. STATEMENT OF FACTS

**A. Subject Incident**

12. This matter arises out of the March 31, 2023 dog bite Incident that took place on or around 190 Honey Lane, Fayetteville, Georgia ("Property").

13. As a result of the Incident, A.L., a minor, suffered bodily injuries.

14. The 90-pound German Shepherd involved in the Incident, to wit: "Tango", was owned by Welch and kept on his Property.

15. Tango had been owned and kept by Welch since on or around 2016.

16. The Lawsuit alleged that Tango had been involved in two other attacks even prior to the Incident.

17. Alishah Lirani, as the Natural Parent and Guardian of A.L., initiated a civil action under O.C.G.A. § 51-2-7, stemming from the Incident, against Respondent Welch in the State Court of Fayette County, State of Georgia, Civil Action File No. 2023SV-0757 ("Lawsuit").

## B. Heritage Policy

18. At the time of the Incident, Heritage issued Homeowners Policy No. GAH0023438 to Isaac Welch, as the named insured, and Kathree Welch, as an additional named insured, for the policy period July 27, 2022 to July 27, 2023 ("Policy"). See Exhibit A.

19. The Policy identified the insured location as the residence of Respondent Welch, to wit: the property and residence located at 190 Honey Ln, Fayetteville, Georgia 30214 ("Property").

20. Unbeknownst to Heritage, Welch kept Tango on the Property.

21. At all material times prior to the Incident, Welch failed to disclose to Heritage that Tango, or any dog for that matter, was kept on the Property. See Application attached as Exhibit "C".

22. Heritage received first notice of the Incident on April 26, 2023 via Welch.

23. Heritage communicated to counsel for Lirani, Fareesh S. Sarangi with Sarangi Law in an initial coverage analysis that personal liability coverage and medical payments to others coverage were excluded for the Incident via correspondence dated May 9, 2023. See correspondence attached as Exhibit "D."

24. Heritage communicated to Welch in an initial coverage analysis and reservation of rights that personal liability coverage and medical payments to others coverage were excluded for the Incident via correspondence dated May 9, 2023. See correspondence attached as Exhibit "E."

25. The letters expressly reserved rights under the Policy and under law, including the right to deny coverage for reasons not stated therein. See Exhibits "D" and "E."

26. Lirani's counsel then sent a demand dated September 15, 2023, which was received on or after November 6, 2023, upon which time Heritage responded on November 10, 2023 by referencing its May 9, 2023 initial coverage

analysis and reservation of rights letter previously sent to Lirani's counsel. See Exhibit "D."

27. On May 2, 2025, approximately one and a half years later, Heritage received its next notice of a negligence or bad faith action filed against it in The State Court of Fayette County, Georgia, Civil Action No. 2025SV-0456. See attached hereto as Exhibit "F."

28. May 2, 2025 was first notice to Heritage that the Lawsuit existed, let alone that Welch "admitted liability, withdrew his answer in the Underlying Lawsuit, allowed default judgment to be entered against him and agreed to a determination of damages by the trial judge" in that Lawsuit. See Exhibit "F" at Paragraph 42.

29. At that time, it was also revealed to Heritage that Welch signed a Covenant Not to Execute and Assignment of Rights on July 2, 2024. See Exhibit "G."

30. The actions identified above in Paragraphs 28 and 29 resulted in an $11,000,000.00 judgment being entered against Heritage on March 18, 2025, which included $1,000,000.00 in compensatory damages and $10,000,000.00 in punitive damages. See Exhibit "B."

31. Prior to issuance of the Heritage Policy to Welch, as the Named Insured, Welch completed an application for insurance, which contained material misrepresentations related to a prohibited canine being kept on the Property.

32. The Policy contains a "Canine Exclusion" which excludes coverage for bodily injury as a result of canine related incidents. See Exhibit "A."

33. The Policy does not identify any canine specifically in the exclusion, including Tango, since no such canine was disclosed at any material time prior, during, or after Welch's completion of the Application for insurance, nor at any time up to the Incident. See Exhibit "A."

34. At all material times from application for the Policy through the Incident, Heritage had no knowledge that a prohibited dog breed in fact was being kept on the Property to which the Policy applied.

35. At all material times from application for the Policy through the Incident, Welch withheld from Heritage that a prohibited dog breed in fact was being kept on the Property.

36. Had Heritage known that a prohibited dog breed was being kept on the Property at any material time, Heritage would not have offered the Policy.

37. Because Welch withheld knowledge that any dog was being kept on the Property, let alone a prohibited dog breed, to wit: the express material failure

to identify ownership and possession of the 90-pound German Shepherd named Tango, Heritage could not have identified same in its Canine Exclusion related to the Policy.

## C. The Application for Insurance

38. On July 7, 2022, Welch applied for the Policy, for coverage to begin with the effective date of July 27, 2022. A copy of the Application is attached hereto as Exhibit "C."

39. Co-Applicant Kathree Welch executed the application on October 11, 2022, as an additional Named Insured. See Exhibit "C."

40. The Application necessarily asks a series of questions for underwriting purposes.

41. Question No. 21 of the Application expressly asked of Welch the following, which he did not indicate in the affirmative:

> Does the applicant(s) keep any prohibited animals on premises, including but not limited to, ineligible breeds of dog (or mix thereof), saddle, livestock, or exotic animals?

42. Notwithstanding, at all material times, including on the July 7, 2022, and October 11, 2022, when Isaac Welch and Kathree Welch respectively signed the Application, the Welches in fact kept an ineligible dog breed on the Property, to wit: Tango, the 90-pound German Shepherd.

43. Next, the Welches executed the "Dog Breed Acknowledgment" through the Application process, affirming that none of the referenced ineligible dog breeds, including German Shepherds, are kept on the Property. See Exhibit "C", and also the following incorporated into this Petition below.

| DOG BREED ACKNOWLEDGEMENT: I understand that if any of the following breeds are owned or kept on the residence premises listed above, the dog must have received AKC's Canine Good Citizens obedience training and the back yard must be completely enclosed by a 6-foot locking fence. | | |
| --- | --- | --- |
| Akitas | American Bulldogs | Bull Mastiffs |
| Beaucerons | Belgian Malinois | Caucasian Mountain Dogs |
| Chow Chows | Doberman Pinschers | German Shepherds |
| Great Danes | Keeshonds | Pit Bulls |
| Rhodesian Ridgebacks | Rottweilers | Staffordshire Terriers |
| Wolf Hybrids | | |
| Any mixed breed that contains one or more of the above breeds. Any dog with a prior bite history. | | |
| Applicant must initial one of the following: None of these breeds are kept on the residence premises. x ___DS___ ___DS___ | | |
| I do own or keep one or more of the above breeds on the residence premises and have provided my agent with the certificate I received from the AKC training and proof of a 6-foot locking fence enclosing my property. x _____ | | |

44. German Shepherds are plainly listed in the Policy as an ineligible breed.

45. Welch falsely and materially represented that no ineligible dog breed was being kept on the Property.

46. With those material misrepresentations unknown to Heritage, Heritage offered the Policy of insurance to Welch.

47. At no material time prior to the Incident did Heritage have knowledge that the Welch kept an ineligible dog breed on the Property.

48. At all relevant times, Welch intentionally withheld this information from Heritage.

49. It remains that had Heritage known that a German Shepherd was being kept on the Property, it would not have offered the Policy to Isaac Welch as the Named Insured and Kathree Welch as the Additional Named Insured.

50. Welch's express misrepresentation as to the existence and presence of a prohibited dog breed on the Property constitutes a material misrepresentation under Georgia Law.

51. Because Welch committed a material misrepresentation in his insurance Application, and Heritage would not have offered the Policy had it known that a German Shepherd was being kept on the Property, Welch is not provided coverage under the Policy for the Incident.

52. Heritage remains in a position of uncertainty as to its rights, obligations, and duties in regard to the extent of any applicable coverage under the Heritage Policy pursuant to the terms at issue and cited herein.

53. Heritage has no adequate remedy at law or otherwise, except by this Petition for Declaratory Judgment.

## VI.    DECLARATORY JUDGMENT ACTION

**COUNT 1: There is no coverage available to Respondent Welch for the Incident under the Heritage Policy because Welch materially misrepresented and failed to disclose that he kept a German Shepherd on the Property.**

54. Heritage incorporates by reference the allegations contained in Paragraphs 1-53 as though set forth fully herein.

55. The Heritage Policy contains the following insuring language:

HOMEOWNERS
HO 00 03 05 11

## HOMEOWNERS 3 – SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

56. The Heritage Policy further provides:

**SECTION I – CONDITIONS**

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;
2. Engaged in fraudulent conduct; or
3. Made false statements;

relating to this insurance.

57. Additionally, the Heritage Policy provides:

**SECTION II – CONDITIONS**

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;
2. Engaged in fraudulent conduct; or
3. Made false statements;

relating to this insurance.

58. The Heritage Policy further provides:

**IL N 001 09 03**

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

59. At all material times Welch was the Named Insured under the Policy.

60. At all material times Welch in fact kept a German Shepherd on Property.

61. At all material times Welch was obligated to comply with all Policy conditions.

62. Welch's failure to truthfully represent that he owned and kept German Shepherd on the Property, including one with potential prior propensities for attacking others. See Exhibit "F."

63. This material misrepresentation was tantamount to concealment or fraud, and Policy language makes it clear that Heritage does not provide coverage to an "insured", whether before or after a loss, that intentionally concealed or misrepresented any material fact or circumstance; engaged in fraudulent conduct; or made false statements.

64. Here, Welch did all three.

65. First, Welch intentionally concealed or misrepresented a material fact or circumstance by denying that he kept one of the prohibited dog breeds on the insured premises in his application for insurance.

66. Next, Welch engaged in fraudulent conduct by denying that he kept one of the prohibited dog breeds on the insured premises in his application.

67. Last, Welch made false statements by denying that he kept one of the prohibited dog breeds on the insured premises in his application.

68. Welch's election to mark "No" when asked whether the Welches had any "prohibited animals", including ineligible dog breeds, constitutes a material misrepresentation under Georgia law.

69. Welch's election to mark "No" when asked whether the Welches had any "prohibited animals", including ineligible dog breeds, violates the Policy and thus no coverage is available to Welch for the Incident.

70. Welch's decision to execute the Dog Breed Acknowledge in the Application, which specifically identifies German Shepherds as a prohibited dog breed, with incorrect information constitutes a material misrepresentation under Georgia law.

71. Welch's decision to execute the Dog Breed Acknowledge in the Application, which specifically identifies German Shepherds as a prohibited dog breed, with incorrect information violates the Policy and no coverage is available to him for the Incident.

72. The misrepresentation is material because Heritage would not have offered this Policy had it known that Welch kept a German Shepherd on the Property.

73. The misrepresentation is material because it changed the nature, extent, or character of the risk.

74. Because Welch made material misrepresentations to Heritage in his application for insurance, there is no coverage for this Incident.

75. Because Welch failed to comply with the Policy, there is no coverage for the Incident.

76. Accordingly, Heritage is entitled to a declaration of this Court that there is no coverage available under the Heritage Policy as to the claims arising out of the subject Incident by virtue of Welch's material misrepresentations through the insurance application process and at all times up to and including the subject Incident.

## VII.   CONCLUSION

77. There is a bonafide, actual, and present need for this Court's declaration concerning the rights and responsibilities of Heritage as there is a bona fide dispute between the parties.

78. Under Georgia Law, the interpretation of an insurance contract is a question of law for the Court to decide. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Scapa Dryer Fabrics, Inc*., 819 S.E.2d 920, 923 (Ga. Ct. App. 2018).

79. Contracts of insurance are interpreted by ordinary rules of contract construction. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co*., 498 S.E.2d 492, 494 (Ga. Ct. App. 1998).

80. Heritage is in a position of uncertainty as to its rights, obligations, and duties in regard to the coverage of the Policy in regards to the underlying tort action.

81. Heritage has no adequate remedy at law or otherwise, except by this Petition for Declaratory Judgment.

CASE NO. 2025SV-0456

## **PRAYER FOR RELIEF**

WHEREFORE, Heritage prays for the following relief from this Honorable

Court:

1. that process be issued as required by law, and Respondents be served with a

   copy of the Summons and Petition for Declaratory Judgment;

2. that the Court issue a declaration that the Heritage Policy does not provide

   coverage to Welch for any claims arising out of the Incident;

3. and for such other and further relief as this Honorable Court deems just and

   proper.


Respectfully submitted this 12 day of August, 2025.

WICKER SMITH O'HARA MCCOY &
FORD, P.A.

*/s/Joseph P. Menello*
Joseph P. Menello
Georgia Bar No. 752378
Jonathan W. Silverman
Georgia Bar No. 106243
Alexander R. Taylor
Georgia Bar No. 990803


3414 Peachtree Road NE
Suite 960
Atlanta, Georgia 30326
(407) 843-3939 Phone

- 17 -

- 18 -

(407) 649-8118 Fax
ATLcrtpleadings@wickersmith.com

CASE NO. 2025SV-0456

# <u>VERIFICATION OF PETITION</u>

*Alan J. Waldauer*    08/07/2025 01:17 PM EDT
_____
Corporate Representative


STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

Signed or attested before me via remote online notarization on 08/07/2025 01:19 PM EDT by Alan J. Waldauer, Jr., as Corporate Representative of Heritage Property & Casualty Insurance Company, who is personally known to me and who took an oath.

*Julia F. Allen*
_____
Signature of Notary Public

**JULIA F. ALLEN**
Notary Public - State of Florida
Commission # HH 568943
My Commission Expires    Aug. 30, 2028

Online Notary Public. This notarial act involved the use of online audio/video communication technology. Notarization facilitated by SIGNiX®

Julia F. Allen
_____
(Name of notary, typed, stamped, or printed)
Notary Public State of Florida


My commission expires: _____

- 18 -